IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARLON CANADY,

     Plaintiff,

v.                              Civil Action No. 3:14CV420

RODERIC L. TUELL, et al.,

     Defendants.

### MEMORANDUM OPINION

Marlon Canady, a Virginia inmate, has submitted this civil action under 42 U.S.C. § 1983.[1] The matter is before the Court for evaluation pursuant to 28 U.S.C. § 1915A, 42 U.S.C. § 1997e(c), Federal Rule of Civil Procedure Rule 8(a), 20(a),[2]

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] (2) *Defendants.* Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions, or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a).

and Plaintiff's compliance with the Court's November 13, 2014 Memorandum Order. Specifically, by Memorandum Order entered November 13, 2014, the Court directed Canady to submit an appropriate particularized complaint. The Court warned Canady that if he failed to submit an appropriate particularized complaint, the Court would drop all defendants not properly joined with the first named defendant. (ECF No. 20.)

On January 5, 2015, the Court received Canady's lengthy, rambling, and repetitive Particularized Complaint. (ECF No. 27.) As explained below, the Particularized Complaint fails to comply with the rules regarding joinder.

## I.   PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); see 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a

3

"formulaic recitation of the elements of a cause of action." Id. (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp., 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, sua sponte, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

4

## II.  JOINDER

The  Federal  Rules  of  Civil  Procedure  place  limits  on  a
plaintiff's  ability  to  join  multiple  defendants  in  a  single
pleading.   See  Fed.  R.  Civ.  P.  20(a).   "The  'transaction  or
occurrence  test'  of  [Rule  20]  .  .  .  'permit[s]  all  reasonably
related  claims  for  relief  by  or  against  different  parties  to  be
tried  in  a  single  proceeding.   Absolute  identity  of  all  events
is  unnecessary.'"   Saval  v.  BL  Ltd.,  710  F.2d  1027,  1031  (4th
Cir.  1983)  (quoting  Mosley  v.  Gen.  Motors  Corp.,  497  F.2d  1330,
1333  (8th  Cir.  1974)).   "But,  Rule  20  does  not  authorize  a
plaintiff  to  add  claims  'against  different  parties  [that]
present[ ]  entirely  different  factual  and  legal  issues.'"   Sykes
v.  Bayer  Pharm.  Corp.,  548  F.  Supp.  2d  208,  218  (E.D.  Va.  2008)
(alterations  in  original)  (quoting  Lovelace  v.  Lee,
No.  7:03cv00395,  2007  WL  3069660,  at  *1  (W.D.  Va.  Oct.  21,
2007)).   "And,  a  court  may  'deny  joinder  if  it  determines  that
the  addition  of  the  party  under  Rule  20  will  not  foster  the
objectives  of  [promoting  convenience  and  expediting  the
resolution  of  disputes],  but  will  result  in  prejudice,  expense,
or  delay.'"   Id.  (quoting  Aleman  v.  Chugach  Support  Servs.,
Inc.,  485  F.3d  206,  218  n.5  (4th  Cir.  2007)).

In  addressing  joinder,  the  Court  is  mindful  that  "the
impulse  is  toward  entertaining  the  broadest  possible  scope  of
action  consistent  with  fairness  to  the  parties;  joinder  of

claims, parties and remedies is strongly encouraged." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 724 (1966). This impulse, however, does not provide a plaintiff free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated. <u>See, e.g.</u>, <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007); <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1350 (9th Cir. 1997). Thus, "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner." <u>George</u>, 507 F.3d at 607.

"The Court's obligations under the PLRA include review for compliance with Rule 20(a)." <u>Coles v. McNeely</u>, No. 3:11CV130, 2011 WL 3703117, at *3 (E.D. Va. Aug 23, 2011) (citing <u>George</u>, 507 F.3d at 607).

> Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that these complaints have produced but also to ensure that prisoners pay the required filing fees.

<u>Id.</u> (citing 28 U.S.C. § 1915(g); <u>Showalter v. Johnson</u>, No. 7:08cv00276, 2009 WL 1321694, at *4 (W.D. Va. May 12, 2009) ("To allow [plaintiff] to pay one filing fee yet join disparate

claims against dozens of parties flies in the face of the letter and spirit of the PLRA." )

### III. SUMMARY OF CLAIMS

Canady's Particularized Complaint names nine separate individuals as defendants. The Particularized Complaint contains a rambling, verbose narrative with three claims for relief. Plaintiff lists his claims as follows:

Claim One: "Violation of Eighth Amendment Right; Cruel and Unusual Punishment, 'Failure to Protect Against Attack By Cellmate.' (Claims Against Defendants 'Logan, Tuell, and Vancamp'[)]." (Part. Compl. 43-44.)

Claim Two: "Violations of Eighth and First Amendment Rights: 'Denial of Adequate Medical Treatment' (Against Defendant Ulep and Tuell.)" (Id. at 47-48.)

Claim Three: "Violation of First Amendment Right; Retaliation for Exercising Protected Right to File Grievances (Claims Against Defendant Tuell, Oates, and Pearson)." (Id. at 56.)

Canady seeks declaratory judgment, several injunction, and monetary damages.

The Defendants named in Canady's three claims are all employed at Sussex I State Prison ("Sussex") and his claims involve events that occurred during his incarceration in Sussex. Canady also names as defendants: Gregory Holloway, Warden at Wallens Ridge State Prison ("WRSP"); M. Stanford, a medical administrator at WRSP; and Daniel Miller, a doctor at WRSP

7

("WRSP Defendants").    However, Canady sets forth no claims in his "Causes of Action" section against the WRSP Defendants. Recognizing that the WRSP Defendants would be improperly joined with the claims against the Sussex defendants, Canady states: "Plaintiff should be allowed to file claims against Defendants Stanford, and Holloway alleged in paragraphs 5, 6, 89 through 109 herein, because filing a separate § 1983 civil action would create the risk of a time bar issue, violating Va. Code § 8.01-243."   (Id. at 62.)

## IV. DISMISSAL OF IMPROPERLY JOINED PARTIES

Because Canady fails to allege a claim against the WRSP Defendants in his Complaint, and because these defendants would be improperly joined,[3]  the Court proceeds with the analysis it

---

[3] In paragraphs five and six of his Particularized Complaint, Canady indicates that during his incarceration at WRSP, "Defendants" denied him crutches and denied him out of cell exercise for six and a half weeks.   (Part. Compl. 6.)    Even if the Court generously construed Canady's Particularized Complaint to bring these claims against the WRSP Defendants, the claims are not properly joined with Claims One through Three.    The claims against the WRSP Defendants neither arise out of the same transaction or occurrence nor present common questions of law and fact as Claims One through Three.    "'As such, this [Particularized C]omplaint comprises multiple law suits, rather than one suit.'"    Jackson v. Olsen, No. 3:09cv43, 2010 WL 724023, at *8 (E.D. Va. Mar. 1, 2010)(quoting Canada v. Ray, No. 7:08cv00219, 2009 WL 2448557, at * 2 (W.D. Va. Aug. 10, 2009)).

Additionally, through the PLRA, Congress sought to ensure "that the flood of nonmeritorious [prisoner] claims does not submerge and effectively preclude consideration of the allegations with merit."    Jones v. Bock, 549 U.S. 199, 203 (2007) (citing Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

accounted in its November 13, 2014 Memorandum Order. The Court drops the WRSP Defendants from the action. Any lurking claim against the WRSP Defendants will be dismissed without prejudice.

The first named defendant in the action is Defendant Roderic L. Tuell, a Unit/Building Manager at Sussex. (Part. Compl. ¶ 10.) Claim One also names Sabrina Logan and Mr. Vancamp, both Building Sergeants/Supervisors at Sussex. Tuell is also named in Claims Two and Three. Claim Two also names Defendant Benjamin T. Ulep, a doctor at Sussex. Claim Three also names Defendants Jerry D Oates, a Unit/Building Manager, and Institutional Classification Authority Hearing Officer at Sussex I, and Eddie Pearson, the Warden at Sussex. Accordingly, the action proceeds on Claims One through Three against Defendants Tuell, Ulep, Pearson, Logan, and Oates.

The Court notes that Canady's Particularized Complaint provides lengthy allegations to support his claims in no discernable order. In his "CAUSE OF ACTION" section, instead of directing the Court to specific paragraphs that support each claim, Canady "realleges, and incorporates by reference paragraphs 1-110 herein" for Claim One (Part Compl. 43-44),

The requirement that inmates must pay the full filing fee for each separate suit, see 28 U.S.C. § 1915(b)(1), is one of the PLRA's key "reforms designed to filter out the bad claims and facilitate consideration of the good." Id. at 204. To allow an inmate, such as Canady, to "package many lawsuits into one complaint exempts him from such a cost, benefit analysis and thus undercuts the PLRA." Canada, 2009 WL 2448557, at *3.

9

"paragraphs 1-122 herein," for Claim Two (id. at 48), and "paragraphs 1-150 herein," for Claim Three (id. at 56).

Despite Canady's utter failure to organize his Particularized Complaint in a manner that lends itself to orderly disposition, the Court culls through the Particularized Complaint and attempts to sort his allegations chronologically by category.

## IV. ANALYSIS OF REMAINING CLAIMS

### A. Claim One (Failure to Protect Canady)

#### 1. Eighth Amendment Standard

To make out an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts that suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" Strickler v. Waters, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege

10

'a serious or significant physical or emotional injury resulting from the challenged conditions.'" De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (quoting Strickler, 989 F.2d at 1381).

The subjective prong of a deliberate indifference claim requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Quinones, 145 F.3d at 168 (citing Farmer, 511 U.S. at 837); see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert

facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich, 129 F.3d at 340 n.2).

### 2. Canady's Allegations

In Claim One, Canady alleges that Defendants Tuell, Logan, and Vancamp violated his Eighth Amendment rights by failing to protect him from an attack by his cell mate by refusing to allow Canady to change cells. In support of his claim, Canady alleges that either on March 6 or March 13, 2012, Canady's cell mate Ernest M. Jones called Defendant Logan to their cell to report that Canady had threatened him and possessed weapons. (Id. ¶ 19.) Defendant Logan found large stones outside the cell door near where Jones stood. (Id. ¶ 20.) Canady explains that inmates used large stones "to put in pillow cases and socks, so an inmate may bash another inmate in the head or striking other body parts to cause injuries. Both inmates denied ownership of the stones." (Id. ¶¶ 20-21.) Defendant Logan warned both inmates "that if she had to return to [the] cell for any reason, she was going to write disciplinary charges, and send [both inmates] to segregation." (Id. ¶ 24.) Both inmates asked for a cell change, and Defendant Logan told them Defendant Tuell made

those decisions.  (Id. ¶ 25.)  On approximately March 27, 2012,
Canady told Defendant Tuell that "he wanted a cell changed
because [Jones] had struck him in the head with a crutch" and
that Jones had removed the screws from the crutches and made a
weapon with the intention to stab Canady.  (Id. ¶¶ 26-27.)
Defendant Tuell "did absolutely nothing, and told [Canady] that
he would look into his complaint."  (Id. ¶ 30.)   On either
April 10 or 17, 2012, Jones falsely accused Canady of
threatening him and having weapons in the cell to Defendant
Vancamp.  (Id. ¶ 34.)  Canady believes Jones planted weapons in
their cell while he was out in the pod working and told
Defendant Vancamp that Jones had the weapons.  (Id. ¶ 35.)
Defendant Vancamp locked Jones and Canady in different tiers of
the pod.  (Id. ¶ 37.)  After a search of the cell, no weapons
were found.  (Id. ¶ 39.)  "Defendant Vancamp then gave [Canady
and Jones] a choice, [ ]either go into the cell, or go to jail
(segregation) with a 201 disciplinary offense.  (Disobeying an
order)."  (Id. ¶ 40.)  In late April and early May 2012, Canady
made two more verbal requests to Defendant Vancamp to have his
cell changed.  (Id. ¶ 43.)  Canady alleges that his cell change
was denied because Sussex denied cell changes for inmates with a
Good Conduct Allowance level of four.  (Id. ¶¶ 47, 49.)

Canady alleges that on June 5, 2012, Jones, attacked him,
"stabbed [Canady] in his forehead (requiring stitches)" and

"suffered a broken leg, (fibula fracture at right ankle, lateral malleolus) and tendon damage to his right index finger" from attempting to defend himself.  (Part. Compl. ¶¶ 18, 50.)

Based on the facts as alleged in his Particularized Complaint, the Court finds that Canady has stated an Eighth Amendment claim in Claim One against Defendants Tuell, Logan, and Vancamp.  The Court will order service of Claim One on these three defendants.

    B.   Claim Two (Inadequate Medical Care)

With respect to an Eighth Amendment claim alleging the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th

14

Cir. 1990) (citing <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference.  <u>See</u> <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985) (citing <u>Gittlemacker v. Prasse</u>, 428 F.2d 1, 6 (3d Cir. 1970)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing.  <u>Hudson v.</u> <u>McMillian</u>, 503 U.S. 1, 9 (1992) (citing <u>Estelle</u>, 429 U.S. at 103-04).  In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable."  <u>Bowring v.</u> <u>Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977).

### 2.  Canady's Allegations Against Dr. Ulep

After the altercation on June 5, 2012, officers took Canady to the prison's medical unit.  (Part Compl. ¶ 51.)  Defendant Dr. Ulep "stitched [Canady's] forehead to stop the bleeding." (<u>Id.</u> ¶ 53.)  Medical staff took x-rays of Canady's right ankle and Dr. Ulep placed Canady's ankle in a plaster cast.  (<u>Id.</u> ¶¶ 54-55.)  The following day, Canady complained that the cast was too tight and Dr. Ulep cut the cast from Canady's "knee to

his toe, to release pressure caused by casting leg and ankle while still swelling." (Id. ¶ 56.) Dr. Ulep told Canady he would re-cast the leg once the swelling decreased. (Id. ¶ 57.) Canady alleges that he remained in the cast that Dr. Ulep cut an opening in for seven and a half weeks. (Id. ¶ 58.)

On June 14, 2012, Dr. Ulep removed Canady's stitches and scheduled Canady's re-casting for the following week. (Id. ¶ 75.) Due to prison lockdowns, the re-casting was rescheduled several times. (Id. ¶ 76.) On June 18, 2012, x-rays confirmed that "the spiral fibula fracture was minimally displaced." (Id. ¶ 78.) On June 27, 2012, Canady was relocated from Sussex to WRSP. (Id. ¶ 88.) The medical department at WRSP "concluded that [Canady's] right ankle fracture was mildly displaced, and needed [an] orthopedic follow-up." (Id. ¶ 80.) On July 26, 2012, an orthopedist viewed Canady's x-rays and told Canady that "he would have indicated 'Open Reduction Internal Fixation Surgery," but the fracture has healed and he would not suggest corrective surgery at that time." (Id. ¶ 83.)

Canady claims that Dr. Ulep provided inadequate medical care by not immediately sending him to an orthopedic surgeon to receive "open reduction internal fixation surgery needed to repair the damage" to his ankle fracture. (Id. ¶ 54.) Canady also faults Dr. Ulep for failing to wait for the swelling to decrease before placing his ankle in a cast (id. ¶ 55), and by

16

failing to place his ankle in a new cast prior to his transfer (id. ¶¶ 57-58). Canady claims Dr. Ulep failed to send him to a specialist to save money. Canady claims he suffered "irreparable damage" (id. ¶ 129) but identifies no harm from Dr. Ulep's actions except to state that he can no longer exercise at his "full potential." (Id. ¶ 136.)

At the core of this claim, Canady simply disagrees with the medical judgment of Dr. Ulep concerning the appropriate treatment for Canady's ankle injury. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright, 766 F.2d at 849 (citing Gittlemacker, 428 F.2d at 6). As explained below, Canady fails to demonstrate any exceptional circumstances that would necessitate judicial review of Dr. Ulep's clinical judgment.

Dr. Ulep's actions in treating Canady's ankle fracture cannot be said to be so grossly incompetent as to shock the conscience. Instead, Canady alleges facts indicating that the same night as Canady sustained injuries Dr. Ulep ordered x-rays of Canady's ankle and placed it in a cast. When Canady complained that the cast was too tight, Dr. Ulep promptly cut the cast to accommodate further swelling and reduce the pressure Canady felt. With respect to Canady's claim that Dr. Ulep placed the cast on while his ankle was still swollen, Canady

17

fails to allege any harm from Dr. Ulep's immediate placing of a cast on Canady's ankle. Dr. Ulep also scheduled a time to have a new cast placed on the ankle when the swelling decreased, however, several lock downs at the prison caused the date to be delayed, and then Canady was transferred to a new institution. Canady fails to allege facts that Dr. Ulep was deliberately indifferent to Canady's ankle break.[4]

Canady also fails to allege facts that indicate that seeing an orthopedist for treatment was medically necessary. See Bowring, 551 F.2d at 48. As an inmate, Canady lacks entitlement to the medical treatment of his choosing. Hudson, 503 U.S. at 9 (citing Estelle, 429 U.S. at 103-04). Although Canady alleges that the orthopedist may have treated Canady's injuries in a different manner, Canady's ankle bone had healed at the time he was taken to the orthopedist. Canady also fails to allege facts that indicated that Dr. Ulep knew of and disregarded an excessive risk to Canady's health by failing to send him to an orthopedist. See Farmer, 511 U.S. at 837; Self v. Crum, 439 F.3d 1227, 1232 (10th Cir. 2006) ("Matters that traditionally

---

[4] Indeed, Canady admits that his ankle bone had healed at the time he was taken to the orthopedist. The orthopedist's treatment notes from July 26, 2012 state: "At this time if I had seen the patient I would have indicated ORIF but at this time the fracture has healed. I think that it has healed appropriately but will need re-evaluation in about three months." (Part. Compl. Ex. M, at 2.) The orthopedist indicated that he "would not suggest corrective surgery at this time." (Id.)

fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing" (citing Ledoux v. Davies, 961 F.2d 1536, 1537 (10th Cir. 1992))).    Canady fails to allege sufficient facts to indicate that Dr. Ulep actually perceived that Canady faced a substantial risk of harm by refusing to refer him to a specialist.  At most, Canady states a disagreement with Dr. Ulep with respect to the appropriate course of treatment for his ankle fracture.    See  Wright,  766  F.2d  at  849  (citing Gittlemacker, 428 F.2d at 6).[5]

### 3.   Canady's Claims Against Defendant Tuell

Canady claims that he

> believes if Defendants Tuell and Oates had not
> interfered with the medical treatment being prescribed
> by Defendant Ulep, by transferring him, [he] believes
> that there was a reasonable probability that some type

---

[5] To the extent Canady alleges that Dr. Ulep delayed in the treatment of his serious medical condition by failing to refer him to an orthopedist, he also fails to state an Eighth Amendment claim.   While a significant delay in the treatment of a serious medical condition may amount to an Eighth Amendment violation, a violation only occurs if the delay results in substantial harm.   See Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir 2008) (citing Estelle, 429 U.S. at 104-05).   Thus, to make out a claim, Canady must allege facts indicating that the delay in referral to an orthopedist caused him substantial harm. Id. at 167.    "'[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.'"  Shabazz v. Prison Health Servs., No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. Feb. 9, 2012) (alteration in original) (quoting Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001)).   Canady alleges no substantial harm from the delay in seeing the orthopedist.    Instead, at the time he saw the orthopedist, the doctor noted that the fracture had healed appropriately.

> of medical treatment at that point could have
> corrected the damage caused by Defendant Ulep's
> failure on June 5, 2012.

(Part. Compl. ¶ 84.) Canady states no Eighth Amendment claim against Defendant Tuell with these vague allegations. First, Canady fails to allege anything beyond mere speculation that Tuell had personal involvement with Canady's transfer to a different institution. Canady also alleges no facts indicating that Tuell had any personal involvement in Canady's medical care. Instead, "'[i]f a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'" Iko, 535 F.3d at 242 (omission in original) (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)).

Moreover, even if Canady alleged sufficient facts to indicate that Defendant Tuell somehow manipulated Canady's transfer, Canady fails to allege facts that indicate that Defendant Tuell knew of and disregarded an excessive risk to Tuell's health by transferring him to a different institution. See Farmer, 511 U.S. at 837.[6]

Claim Two lacks merit and will be dismissed.

_____

[6] To the extent Canady claims that his transfer to a new institution caused a delay in his referral to a specialist, as previously discussed Canady alleges no substantial harm from the delay.

20

### C.    Claim Three (Retaliation)

In Claim Three, Canady claims that Defendants Tuell, Oates, and Pearson violated his First Amendment rights "when they retaliated against [him] and transferred him to a more restricted level five prison for exercising his right to file grievances against defendants, asserting that defendants denied cell change request causing attack by cellmate, and injuries." (Part. Compl. ¶ 4; see id. ¶¶ 152-53, 158, 159-60.)[7]  Canady's claim is extremely disjointed and requires the Court to scour the record to find instances where he mentioned Defendants in relation to this claim.  Canady alleges that he "filed informal complaints, and grievances on June 22, 2012, asserting that defendant, "Building Manager" caused cell attack."   (Id. ¶ 18(c).)  On June 27, 2012, Canady was transferred to WRSP. (Id. ¶ 18(d).)  "It is Canady's belief that the transfer was in retaliation for filing grievances."  (Id. ¶ 18(e).)  Canady also claims that "Defendant Tuell conspired with Defendant Jerry Oates to start and complete the retaliatory transfer to W.R.S.P."  (Id. ¶ 72.)

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States.   See Dowe v. Total

---

[7] The Court notes that Canady does not allege a Fourteenth Amendment claim relating to his transfer.

21

Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th
Cir. 1998). "Government officials may not be held liable for
the unconstitutional conduct of their subordinates under a
theory of respondeat superior." Iqbal, 556 U.S. at 676
(citations omitted).      "[A] plaintiff must plead that each
Government-official defendant, through the official's own
individual actions, has violated the Constitution." Id. First,
Canady alleges no personal involvement in the deprivation of his
constitutional rights by Defendant Pearson. At most he alleges
"supervisory liability" (id. ¶ 160) and claims that Defendant
Pearson is liable for approving the transfer to a different
prison. Canady fails to allege facts indicating that Defendant
Pearson was personally involved in the deprivation of his
rights.

     Canady alleges that Defendant Oates and Tuell were building
managers. (See id. ¶¶ 66-69.) Canady bases Defendant Oates and
Defendant Tuell's liability solely on the fact that they "were
the only two Unit Managers with the authority to initiate a
transfer." (Id. ¶ 158.) Canady also claims that "Defendant
Tuell conspired with Defendant Jerry Oates to start and complete
the retaliatory transfer to W.R.S.P., because only these two
unit managers were . . . hearing officers for the segregation
units, and was responsible for segregation transfers, either to
prison population units, or to different prisons." (Id. ¶ 72.)

22

Canady's vague accusations fail to state a claim for relief under the First Amendment.

Claims of retaliation by inmates are generally treated with skepticism because "'[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)) (some internal quotation marks omitted).[8] "[P]laintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ." Adams, 40 F.3d at 74. Instead, a plaintiff must allege facts "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Id. at 75. Contrary to Canady's contention, "there is no constitutional right to participate in grievance proceedings." Id. (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). Because Canady enjoys no constitutional right to participate in grievance proceedings, his act of pursuing grievances about Sussex staff was not the exercise of a constitutional right. Id. (citing Flick, 932 F.2d at 729).

---

[8] This case provides a prime example as to why claims of retaliation are met with skepticism. Here, Canady complained that prison officials violated his constitutional rights by refusing to separate him from his cell mate. Yet, when prison officials separated Canady from his cell mate by moving him to another institution, Canady cries retaliation.

Canady also fails to allege that the purported retaliatory act—transferring him to a higher security prison—violated his constitutional rights. <u>Cochran</u>, 73 F.3d at 1317. Canady fails to allege facts indicating that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such right." <u>Adams</u>, 40 F.3d at 75. Claim Three will be dismissed.

**V.    CONCLUSION**

The action will proceed on Claim One against Defendants Tuell, Logan, and Vancamp. All other claims are dismissed without prejudice. In accordance with the accompanying Order, the Court will attempt service pursuant to an informal service agreement with the Attorney General's Office for the Commonwealth of Virginia for Defendants Tuell, Logan, and Vancamp.

The Clerk is directed to send a copy of the Memorandum Opinion to Canady and the Attorney General's Office for the Commonwealth of Virginia.

It is so ORDERED.

/s/ REP

Date: October 1, 2015
Richmond, Virginia

Robert E. Payne
Senior United States District Judge