

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARLON CANADY,

    Plaintiff,

v.                             Civil Action No. 3:14CV420

RODERIC L. TUELL, <u>et</u> <u>al.</u>,

    Defendants.

## MEMORANDUM OPINION

Marlon Canady, a Virginia inmate, has submitted this civil action under 42 U.S.C. § 1983.[1]  This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 50), Canady's Motion Request for a Temporary Restraining Order (ECF No. 65), and Canady's Motion Request for Production of Documents (ECF No. 69).  For the reasons set forth below, the Motion for Summary Judgment (ECF No. 50) will be granted in part and denied in part, the Motion Request for a Temporary Restraining Order (ECF No. 65) will be denied, and the Motion Request for

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

Production of Documents (ECF No. 69) will be denied without prejudice.

On January 5, 2015, the Court received Canady's lengthy, rambling, and repetitive Particularized Complaint. (ECF No. 27.) By Memorandum Opinion and Order entered on October 2, 2015, the Court dismissed all of Canady's claims except Claim One. <u>Canady v. Tuell</u>, No. 3:14CV420, 2015 WL 5793678, at *9 (E.D. Va. Oct. 2, 2015). The Court construes the remaining claim to be as follows:

> **Claim One: (a)** Defendants R. Tuell ("Tuell"), Housing Unit Manager at Sussex I State Prison ("Sussex I"), S. Logan ("Logan"), former Corrections Sergeant at Sussex I, and S. Vancampen ("Vancampen"),[2] Corrections Counselor at Sussex I ("Defendants"), violated Canady's Eighth Amendment rights by failing to protect him from an attack by his cell mate by refusing to allow Canady to change cells.
>
> **(b)** Tuell refused to allow Canady to change cells because he had a good conduct allowance level four.

Canady requests declaratory, injunctive, and monetary relief. Defendants have moved for summary judgment. Canady has responded. The matter is ripe for disposition. For the reasons discussed below, the Motion for Summary Judgment will be granted in part and denied in part.

---

[2] While Canady names "Vancamp" as a Defendant, counsel indicates that Defendant's name is Shaun Vancampen. (Mot. Summ. J. 1, ECF No. 50).

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Nevertheless, "Rule 56 does

3

not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n.7 (5th Cir. 1992)).

As pertinent here, in support of their Motion for Summary Judgment, Defendants submit their respective affidavits (Mem. Supp. Mot. Summ. J. Ex. 1 ("Logan Aff."), ECF No. 51-1; id. Ex. 2 ("Tuell Aff."), ECF No. 51-2; Id. Ex. 3 ("Vancampen Aff."), ECF No. 51-3); and an Internal Incident Report (Tuell Aff. Encl. A).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. Celotex Corp., 477 U.S. at 324.   The Court previously warned Canady that:

> [T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and that the affiant is competent to testify on the matter stated therein. See Fed. R. Civ. P. 56(c)(4).

(ECF No. 42, at 2.)   Canady failed to comply with this directive.   Instead, he filed a document entitled "AFFIDAVIT IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT" ("Opposition," ECF No. 57) comprised of numbered statements

4

where he admits or denies portions of the Defendants' Memorandum in Support of Motion for Summary Judgment, provides legal argument, and makes unsupported conclusions upon which he has no firsthand knowledge.  The Court will not accord the Opposition any evidentiary value.

Additionally, Canady submitted an unsworn "Particularized Complaint."  Canady also states the following:  "I have read the foregoing complaint, and hereby verify that the matters alleged therein, are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true.  I certify under penalty of perjury that the foregoing is true and correct."  (Part. Compl. 68.)  Such a statement fails to transform the statements in the Particularized Complaint into admissible evidence.  Hogge v. Stephens, No. 3:09CV582, 2011 WL 2161100, at *2-3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as '"mere pleading allegations'" (quoting Walker v. Tyler Cty. Comm'n, 11 F. App'x 270, 274 (4th Cir. 2001))).  Therefore, the matters referred to as "on information and belief" will not be afforded evidentiary effect.  Attached to his Opposition and filed more than a year after his Particularized Complaint, Canady states:  "MARLON CANADY, pro se plaintiff, hereby certify, or declare under penalty of perjury that the information asserted in My

Particularized Complaint, and in this Affidavit in Opposition to Defendants' Motion for Summary Judgment is true, and correct to the best of my knowledge." (Opposition 28.)   While it is doubtful that Canady's Particularized Complaint constitutes admissible evidence, because Defendants fail to lodge any objection to the admissibility of the Particularized Complaint, the Court nevertheless considers the Particularized Complaint (except where based on information and belief) in assessing the propriety of entering summary judgment.

Turning to the contents of Canady's Particularized Complaint, "sworn statements 'must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify to the matters stated.'"   Fed. R. Civ. P. 56(c)(4). Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." Evans v. Techs. Apps. & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citations omitted).   The absence of an "affirmative showing of personal knowledge of specific facts" prevents the consideration of such facts in conducting the summary judgment analysis." EEOC v. Clay Printing Co., 955 F.2d 936, 945 n.9 (4th Cir 1992) (internal quotation marks omitted). Canady's Particularized Complaint runs afoul of these requirements.   The Particularized Complaint contains numerous legal conclusions and matters upon which Canady has no personal knowledge, and thus fails to comply with Federal Rule of Civil

Procedure 56(c)(4).[3]  The Court will not consider any legal conclusions or matters upon which Canady has no personal knowledge in its consideration of the propriety of summary judgment relief.

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment.  All permissible inferences are drawn in favor of Canady.

## II. SUMMARY OF PERTINENT FACTS

### A. Facts Pertaining To Defendant Logan

Either on March 6 or March 13, 2012, Canady's cell mate Ernest M. Jones called Logan to their cell to report that Canady had threatened him and possessed weapons.  (Part. Compl. ¶ 19.) Logan found large stones outside the cell door near where Jones stood.  (Id. ¶ 20.)  Canady explains that inmates used large stones "to put in pillow cases and socks, so an inmate may bash another inmate in the head or striking other body parts to cause injuries.  Both inmates denied ownership of the stones."  (Id.

---

[3] For example, Canady states:  "It is plaintiff's belief that Jones may had planted some type of weapon in plaintiff's area of the cell, or in plaintiff's property to cause a disciplinary infraction to be written, and moving plaintiff to the segregation unit."  (Part. Compl. ¶ 35.)  Canady also indicates that Vancampen locked Jones and Canady "in separate showers on separate tiers of the pod" (id. ¶ 37), but then claims that even though he was locked in a shower that he somehow personally knew that "Defendants did not do a thorough check of plaintiff's cell, and only searched under inmates['] mattresses" (id. ¶ 39).

¶¶ 20-21.) Logan warned both inmates "that if she had to return to [the] cell for any reason, she was going to write disciplinary charges, and send [both inmates] to segregation." (Id. ¶ 24.) Both inmates asked for a cell change. Logan told them that Tuell made those decisions. (Id. ¶ 25.)

Logan has no recollection of speaking with Canady about a cell change or finding large stones outside of the cell. (Logan Aff. ¶ 5.) As a Sergeant, Logan had no authority to make cell changes at Sussex. (Id.) However, Logan avers:

> Had either offender told me that he had been threatened by his cellmate, and especially if weapons were mentioned, I would have immediately notified my supervisor, the Housing Unit Manager. The offenders would have been brought out of the cell and the cell would be searched for weapons. In addition, situations requiring immediate separation of offenders could also be handled by the Building Lieutenant who would have the authority to immediately separate the offenders. At no time would I force offenders to stay in a cell together when threats are being made or weapons may be involved. I would never ignore this kind of situation.

(Logan Aff. ¶ 5.)

### B. Facts Pertaining To Defendant Tuell

Canady avers that, on approximately March 27, 2012, he told Tuell that "he wanted a cell change because [Jones] had struck him in the head with a crutch" and that Jones had removed the screws from the crutches and made a weapon with the intention to stab Canady. (Part. Compl. ¶¶ 26-27.) According to Canady, Tuell "did absolutely nothing, and told [Canady] that he would

look into his complaint." (Id. ¶ 30.) Tuell has no recollection about speaking with Canady about his cellmate striking him with a crutch or a conversation about a conflict between the two inmates. (Tuell Aff. ¶¶ 4-5.) However, Tuell avers that had Canady informed him of such an incident, he would have immediately removed him from the cell and taken him to the medical department for evaluation. (Id. ¶ 5.) Tuell further explains that Canady and Jones would have been placed in segregation pending the investigation of their claims. (Id. ¶ 4.) Offenders would not be allowed to remain in a cell together in a situation where one is allegedly assaulting the other, or there are claims of weapons. (Id.)

### C.   Facts Pertaining To Defendant Vancampen

On either April 10 or 17, 2012, Jones informed Vancampen that Canady had threatened him and had weapons in the cell. (Part. Compl. ¶ 34.)[4] Canady told Vancampen that it was Jones that had the weapons and Jones was trying to get Canady removed from the unit. (Id. ¶ 36.) Vancampen locked Jones and Canady in different tiers of the pod. (Id. ¶ 37.) After a search of the cell, no weapons were found. (Id. ¶ 39.) "Vancamp[en] then gave [Canady and Jones] a choice, [ ]either go into the cell, or go to jail (segregation) with a 201 disciplinary offense. (Disobeying an order)." (Id. ¶ 40.) Vancampen avers that he

---

[4] Canady avers that this information was false.

has no knowledge of this claim; however, "[i]n accordance with security procedures, I would not have placed the two offenders back in the cell after the cell was searched for weapons. I would have moved Jones or Canady to segregation for their safety and protection." (Vancampen Aff. ¶ 4.) Vancampen explains that "[w]hile in segregation, the Institutional Investigator would then evaluate the offenders and their claims to determine a suitable housing assignment in a different housing unit." (Id.) In late April and early May 2012, Canady made two more verbal requests to Vancampen to have his cell changed. (Part. Compl. ¶ 43.)[5] Tuell avers that no policy exists at Sussex I that prevents Good Conduct Allowance Level IV classified inmates from being moved to another cell, especially for safety reasons. (Tuell Aff. ¶ 7.) Moreover, Good Conduct Allowance "has no relation to [an inmate's] cell assignment, and is not considered in making cell assignments." (Id.)

"An offender may request a cell change by submitting a cell change request form to his assigned counselor. The forms are readily available to offenders through the floor officers and control room officers in the housing units. Standard requests are routed to the Housing Unit Manager for review." (Id. ¶ 5.) On the form, an offender may note if it is an emergency.

---

[5] Canady alleges that two correctional officials advised him that his cell change was denied because Sussex denied cell changes for inmates with a Good Conduct Allowance level of four. (See Part. Compl. ¶¶ 47, 49.)

(Vancampen Aff. ¶ 5.) Either Jones or Canady could have submitted a cell change request form or told any staff member they were in danger. (Tuelll Aff. ¶ 6.) Jones and Canady are housed in a general population building and have access to security staff, medical staff, and counselors. (Id.) "Supervising security staff members working in the housing unit have authority to take immediate action to place offenders in segregation when obvious conflict exists between cellmates including threats, assaults and claims of weapons." (Id.) Sergeants and Lieutenants have the discretion to move offenders to immediately and then notify their supervisor, and are not required to wait for approval from Tuell. (Id.) Vancampen avers that "[a]s a Building Sergeant, [he] had the authority to move offenders to segregation for their safety" and "would then have notified [his] supervisor, the Housing Unit Manager." (Vancampen Aff. ¶ 5.)

### D. Facts Pertaining To The Assault

On June 5, 2012, Jones attacked Canady, "stabbed [Canady] in his forehead (requiring stitches)" and Canady "suffered a broken leg, (fibula fracture at right ankle, lateral malleolus) and tendon damage to his right index finger" from his attempt to defend himself. (Part. Compl. ¶¶ 18, 50.) Vancampen and Logan aver that they were not at work on June 5, 2012 and had no knowledge of a need to separate Jones and Canady or that a fight

11

took place between the two inmates.   (Logan Aff. ¶ 6; Vancampen Aff. ¶ 6.)   Tuell has no recollection of the altercation; however, he provides the Internal Incident Report indicating that an altercation occurred between Jones and Canady on June 5, 2012.  (Tuell Aff. ¶ 7.)

## III.  ANALYSIS

### A.   Official Capacity

As a preliminary matter, to the extent that Canady sues Defendants in their official capacity for monetary damages, these claims are dismissed.   See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989) (explaining that state officials sued in their official capacities are not "persons" under § 1983.)

### B.   Failure To Protect Legal Standard

The Eighth Amendment imposes a duty on prison officials "'to protect prisoners from violence at the hands of other prisoners.'"   Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)); see Cox v. Quinn, --- F.3d ----, 2016 WL 3620189, at *4 (4th Cir. July 6, 2016).  Nevertheless, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety.  See Farmer, 511 U.S. at 834.  To establish a claim for failure to protect, a plaintiff must show:  (1) a

12

"serious or significant physical or emotional injury," De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003), and (2) that prison officials had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. As to the second prong, the Supreme Court has emphasized that it is conscious disregard for intolerable risks that provides the touchstone of the deliberate indifference standard for Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837. Thus, Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837); Rich v. Bruce, 129 F.3d 336, 340 (4th Cir. 1997)).

In Farmer, the Supreme Court did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3. However, it is understood that "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." Riccardo v. Rausch, 375 F.3d 521, 525 (7th

Cir. 2004).   Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates." Westmoreland v. Brown, 883 F. Supp. 67, 74 (E.D. Va. 1995).   Therefore, a baseline risk of assault inherent to prison life cannot support an Eighth Amendment claim.   See Grieveson v. Anderson, 538 F.3d 763, 776-77 (7th Cir. 2008).

Here, it is undisputed that Canady suffered a serious or significant physical injury.   Thus, this matter turns on whether Defendants knew of a substantial risk of harm to Canady.   Direct evidence of a defendant's actual knowledge is not required. Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (citing Farmer, 511 U.S. at 842-43).   Instead,

> [a] prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the 'substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued has been exposed to information concerning the risk and thus must have known about it.'

Id. at 133 (some internal quotation marks omitted) (quoting Farmer, 511 U.S. at 842).   "'[E]ven a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he merely refused to verify underlying facts that he strongly suspected to be true' or that he 'declined to confirm inferences of risk that he strongly suspected to

14

exist.'" Id. at 133-34 (some internal quotation marks omitted) (quoting Brice v. Virginia Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)). "On the other hand, as the vagueness of a threat increases, the likelihood of actual knowledge of impending harm decreases. So, to, does the official's ability to respond." Dale v. Poston, 548 F.3d 563, 569 (7th Cir. 2008) (internal citation and quotation marks omitted).

To rebut the deliberate indifference charge, in the face of obvious risk, defendants may show, "'for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.'" Makdessi, 789 F.3d at 134 (quoting Farmer, 511 U.S. at 844).

## B. Defendant Logan

In early March 2012, Canady's cell mate Jones called Logan to their cell to report that Canady had threatened him and possessed weapons and Defendant Logan found large stones outside the cell door near where Jones stood. (Part. Compl. ¶¶ 19-20.) Both inmates denied ownership of the stones. (Id. ¶ 21.) According to Canady, Logan warned both inmates "that if she had to return to [the] cell for any reason, she was going to write disciplinary charges, and send [both inmates] to segregation."

(Id. ¶ 24.) Both inmates asked for a cell change, and Logan told them Tuell made those decisions. (Id. ¶ 25.)

Logan has no recollection of speaking with Canady about a cell change or finding large stones outside of the cell. (Logan Aff. ¶ 5.) Nevertheless, the undisputed facts demonstrate that her actions were reasonable. Contrary to Canady's assertion that Jones was violent and the aggressor, and Logan failed to protect him, the facts alleged by Canady tend to establish that as of March 2012, Canady instead had threatened Jones. And, Canady has not produced any admissible evidence that Jones was particularly inclined to assault him as of March 2012. See, e.g., Billman v. Ind. Dep't of Corr., 56 F.3d 785, 788 (7th Cir. 1995). Moreover, Canady has not produced evidence reflecting that Logan knew of any threats by Jones directed toward Canady. See Whaley v. Erickson, 339 F. App'x 619, 622 (7th Cir. 2009) (granting summary judgment for defendants because the plaintiff "never told the defendants that [the assailant] had made specific threats to harm him, and he presented no evidence that any of the defendants knew about [the assailant's] purported propensity for violence").

After the early March 2012 incident, Canady fails to establish that Logan had any personal involvement in the purported deprivation of his Eighth Amendment rights. On this record, Canady has not produced sufficient evidence to allow a

16

reasonable juror to infer that Logan actually perceived that Canady faced a substantial risk of harm from Jones. See Johnson, 145 F.3d at 168. Because Canady fails to demonstrate that Logan acted with deliberate indifference, Claim One (a) against Logan will be dismissed.

### C. Defendant Tuell

First, to the extent that Canady contends in Claim One (b) that two prison officials informed him that "his cell change was denied because his [Good Conduct Allowance] Level was a four," (Part. Compl. ¶ 48) and faults Tuell for implementing this purported policy (id. ¶ 120), Canady has put forth no evidence of the existence of such policy. To the contrary, the undisputed evidence establishes that no such policy existed at Sussex I that prevented Good Conduct Allowance Level IV classified inmates from being moved to another cell, and, instead, Good Conduct Allowance "has no relation to [an inmate's] cell assignment, and is not considered in making cell assignments." (Tuell Aff. ¶ 7.)[6] Thus, to the extent that Canady contends that Tuell implemented a policy that denied Canady a cell change based on his Good Conduct Allowance Level 4, that claim is speculative and is based upon inadmissible hearsay. Claim One (b) will be dismissed.

---

[6] Canady merely alleges that such a policy exists without any evidence to support his claim.

17

Second, in Claim One (a), Canady faults Tuell for failing to protect him from the assault by his roommate on June 5, 2012. In late March 2012, Canady informed Tuell that he wanted a cell change because Jones had struck him in the head with a crutch, and Jones had fashioned a weapon with the intention to stab Canady. (Compl. ¶¶ 26-27.) According to Canady, Tuell "did absolutely nothing, and told [Canady] that he would look into his complaint." (Id. ¶ 30.) Tuell also told Canady that the records department was in charge of authorizing cell changes. (Id. ¶ 31.) Canady contends that, because Tuell "was advised that Canady was struck in the head with a crutch by cellmate Jones, and also was advised that cellmate made a weapon . . . with the intent to stab Canady" (id. ¶ 116), Tuell failed to protect Canady from the attack by Jones more than two months later, on June 5, 2012 (id. ¶ 112).

Tuell swears that he has no recollection of this interaction with Canady, but that, if Canady had informed him of such an incident, he would have immediately removed him from the cell and taken him to medical, and then both Canady and Jones would have been placed in segregation. (Id. ¶ 4.) An equivocal response is insufficient to create a genuine issue of material fact. See Dickey v. Baptist Mem'l Hosp.-N. Miss., 146 F.3d 262, 266 n.1 (5th Cir. 1998) (5th Cir. 1998) (explaining that affiant swearing that he "has no present recollection of the

conversation . . . is not enough, by itself, to create a genuine issue of material fact"); see Fed. R. Civ. P. 56 (requiring the party opposing summary judgment to point to specific evidence that creates a general issue of material fact).

Besides denying any recollection of his conversation with Canady and providing standard procedure for addressing inmate threats or cell changes, Tuell has not addressed adequately why his actions or inaction on March 27, 2012 were not deliberately indifferent to a serious risk of harm to Canady in June 2012. On the current record, Canady has presented evidence to show that he informed Tuell that Jones had injured him and possessed a weapon, and Tuell did nothing. Such evidence is sufficient to support a claim of deliberate indifference against Tuell. See Cox, 2016 WL 3620189, at *5-6. Accordingly, Tuell's Motion for Summary Judgment with respect to Claim One (a) is denied.

### D.   Defendant Vancampen

Canady avers that, on either April 10 or 17, 2012, Jones falsely reported to Vancampen that Canady had threatened him and that Canady had weapons in the cell. (Part. Compl. ¶ 34.) Canady says that he told Vancampen that it was Jones that had the weapons and that Jones was trying to get Canady removed from the unit. (Id. ¶ 36.) As a result, Vancampen locked Jones and Canady in different tiers of the pod, searched their cell, found no weapons, and then directed both inmates to return to their

cell or go to segregation. (Compl. ¶¶ 37-41.) Canady states that, in late April and early May, he verbally asked Vancampen for a cell change. (Id. ¶ 43.) Vancampen denies any recollection of this incident, but avers that he would not place Canady and Jones back in their cell after it was searched for weapons in accordance with security procedures. (Vancampen Aff. ¶ 4.) Vancampen also avers that he lacked the ability to assign Canady to another cell, but that he could have moved him if he was being physically threatened or weapons were present and the situation required immediate action. (Id. ¶ 5.)

The vague information that Canady had weapons in the cell and was threatening Jones insufficiently demonstrates that Vancampen should be deemed subjectively aware that Canady faced a substantial risk of imminent assault at Jones's hands. "A substantial risk of serious harm means that the risk that [Jones] would violently attack [Canady] was 'so great' that it was 'almost certain to materialize if nothing [was] done.'" Miller v. Fisher, 381 F. App'x 594, 596-97 (7th Cir. 2010). Canady provides no evidence that Jones was "almost certain" to attack him. Canady has produced no evidence reflecting that Vancampen knew of any threats by Jones directed toward Canady. See Whaley, 339 F. App'x at 622. To the contrary, Canady's evidence demonstrates that, in April 2012, Vancampen would have reasonably perceived that Canady, not Jones, was the aggressor.

Additionally, Canady's communications to Defendant Vancampen do not reflect that Canady feared an attack by Jones, but that Canady might be the aggressor in any future violence. See Bond v. Story, No. 3:09CV147, 2011 WL 5599390, at *4 (E.D. Va. Nov. 17, 2011) (citing Miller, 381 F. App'x at 597). Moreover, Vancampen investigated the report and found no weapons in the cell.

After the April 2012 incident, Canady fails to establish that Vancampen had any personal involvement in the purported Eighth Amendment violation. Canady fails to offer sufficient evidence that, in April 2012, Canady suffered a substantial risk of serious harm from Jones, and that Vancampen was deliberately indifferent to that risk. Canady simply has not produced enough evidence to allow a reasonable juror to infer that Vancampen actually perceived that Canady faced a substantial risk of attack from Jones before Jones assaulted Canady. Accordingly, the Court will grant Vancampen's Motion for Summary Judgment. Claim One (a) against Defendant Vancampen will be dismissed.

## V. OUTSTANDING MOTIONS

Canady has filed a Motion Request for a Temporary Restraining Order against officials who are not Defendants in the instant action to prevent them from transferring Canady away

21

from Keen Mountain Correctional Facility.[7]  The relief Canady
seeks is wholly unrelated to this action.  Accordingly, Canady's
Motion Request for a Temporary Restraining Order (ECF No. 65)
will be denied.  Canady remains free to file a complaint against
these individuals in a new action in the appropriate venue.

Canady also has filed a second Motion Request for
Production of Documents. (ECF No. 69.)  Canady states that, on
March 17, 2016, he mailed his "First Request for Production of
Documents" to counsel for Respondent and he has not received the
requested documents.  (Mot. Prod. Docs. 1.)  Canady now
simultaneously submits this second Motion Request for Production
of Documents to the Court and to counsel for Respondent.  The
Court reminds Canady that discovery is to be conducted on an
informal basis.  No motion concerning discovery may be filed
with the Court until the parties have made a good faith effort
to resolve all legitimate discovery disputes.  See E.D. Va. Loc.
Civ. R. 37(E).  The Court reminds Canady that discovery requests
must be reasonable and relevant to the issues presently before
the Court.  At the present, Canady's twenty-two page request is
far from reasonable and relevant to the issues remaining in this
action.  Canady must also certify that a good faith effort has
been made to resolve the discovery matter at issue by conferring

---

[7] Canady names Jeffery B. Kiser, Warden at Keen Mountain
Correctional Center; Henry Ponton, the Western Regional
Director; and Keith Dawkins, Central Classification Manager.

with counsel for the defendants regarding the resolution of such matters. Fed. R. Civ. P. 37(a)(1). Canady's Motion Request for Production of Documents (ECF No. 69) will be denied without prejudice.

## VI.   CONCLUSION

For the forgoing reasons, the Motion for Summary Judgment (ECF No. 50) will be granted in part and denied in part. Claim One (a) against Defendants Logan and Vancampen will be dismissed. Claim One (b) will be dismissed. The matter will proceed on Claim One (a) against Tuell, and will be placed on the trial calendar.

The Clerk is directed to send a copy of the Memorandum Opinion to Canady and the Attorney General's Office for the Commonwealth of Virginia.

It is so ORDERED.

_____ /s/   REP

Robert E. Payne
Senior United States District Judge

Date: July 19, 2016
Richmond, Virginia

23